**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  1:24-cv-00808

ERIC LINDEMANN, Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

SSR MINING, INC., RODNEY P. ANTAL, ALISON WHITE, STEWART J. BECKMAN, WILLIAM NEVIN, and F. EDWARD FARID,

      Defendants.

---

**CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS**

---

Adam M. Apton
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, N.Y. 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
aapton@zlk.com

*Attorneys for Plaintiff*

Plaintiff Eric Lindemann ("Plaintiff"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to their own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by SSR Mining, Inc. ("SSR" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of SSR's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

## **NATURE OF THE ACTION**

1.      This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired SSR securities between June 27, 2022 and February 12, 2024, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2.      Defendants purport to be a leading free cash flow focused intermediate gold company with four producing assets located in the United States, Turkey, Canada, and Argentina, combined with a global pipeline of high-quality development and exploration assets. Over the last three years, the four operating assets combined have produced on average more than 700,000

gold equivalent ounces annually. SSR's diversified asset portfolio is comprised of assets along several of the world's most precious metal districts including the Copler mine in Turkey; the Marigold mine in Nevada, USA; the Seabee mine in Saskatchewan, Canada; and the Puna mine in Jujuy, Argentina.

3.    Defendants provided investors with material information concerning SSR's full year 2022 production and cost of sales as well as the Company's outlook for 2023 to 2025. Defendants' statements included, among other things, SSR's expectation to deliver a strong and stable production base in 2023 with total production of 700,000 to 780,000 gold equivalent ounces at consolidated cost of sales of $1,055 to $1,115 per gold equivalent ounce and AISC of $1,365 to $1,425 per gold equivalent ounce. SSR forecasted an average production base of approximately 700,000 gold equivalent ounces per year through 2025. Defendants also routinely reiterated their commitment to "safety" and "the care for our teams," and the "environment," which they described as "foundational to business performance."

4.    Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading statements and/or concealing material facts that SSR management had adequate internal controls specifically relating to safety practices and operational integrity at the Copler mine ("Copler") in Turkey. This caused Plaintiff and other shareholders to purchase SSR's securities at artificially inflated prices.

5.    The truth emerged on February 13, 2024 when SSR issued a press release announcing it was suspending operations at the Copler mine due to a large slip at the heap leach pad. Days later on February 16, 2024, SSR issued another press release that search and rescue operations to locate nine missing workers at the Copler mine. Significantly, the press release

stated that operations remain suspended and eight Copler mine employees have been detained while the local authorities conduct their investigation.

6.      On February 18, 2024 SSR issued another press release acknowledging that several of our team members are facing charges in relation to the recent incident. The press release also stated that the Copler environmental permit was revoked, and the operation will remain suspended until further notice.

7.      On February 27, 2024 the Company issued a press release announcing SSR was not able to estimate or predict when it will resume operations at Copler and therefore was "assessing the potential impacts on the business, cash flows, results of operations and financial condition." In pertinent part, Defendants announced that due to the evolving situation at our Çöpler mine, we are retracting our previously issued 2024 and long-term guidance forecasts for Çöpler and Türkiye. Defendants also announced they were suspending quarterly dividend payments and the automatic share purchase plan ("ASPP").

8.      Investors and analysts reacted immediately to SSR's revelation of the mine collapse. The price of SSR's common stock declined dramatically. From a closing market price of $9.72 per share on February 12, 2024, SSR's stock price fell to $4.50 per share on February 13, 2024, a decline of nearly 54% in the span of just a single day.

## JURISDICTION AND VENUE

9.      Plaintiff brings this action, on behalf of himself and other similarly situated investors, to recover losses sustained in connection with Defendants' fraud.

10.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

12.    Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant SSR is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

13.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

14.    Plaintiff purchased SSR common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in SSR is attached hereto.

15.    SSR Mining, Inc. is a British Columbia corporation with its principal executive offices located at 6900 E. Layton Avenue, Suite 1300, Denver, Colorado 80237. During the Class Period, the Company's common stock traded on the NASDAQ Stock Market (the "NASDAQ") under the symbol "SSRM."

16.     Defendant Rodney P. Antal ("Antal") was, at all relevant times, the Executive Chairman and Chief Executive Officer of SSR.

17.     Defendant Alison White ("White") was, at all relevant times, the Executive Vice President and Chief Financial Officer of SSR.

18.     Defendant Stewart J. Beckman ("Beckman") was, at all relevant times, the Executive Vice President and Chief Operating Officer of SSR.

19.     Defendant William Nevin ("Nevin") was, at all relevant times, SSR's Executive Vice President of Operations and Sustainability.

20.     Defendant F. Edward Farid ("Farid") was, at all relevant times, SSR's Executive Vice President of Operations and Chief Corporate Development Officer.

21.     Defendants Antal, White, Beckman, Nevin, and Farid are sometimes referred to herein as the "Individual Defendants." SSR together with the Individual Defendants are referred to herein as the "Defendants."

22.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of SSR's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were

6

being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

23.    SSR is liable for the acts of the Individual Defendants, and its employees under the doctrine of *respondeat superior* and common law principles of agency as all the wrongful act complained of herein were carried out within the scope of their employment with authorization.

24.    The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to SSR under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### A.    Company Background

25.    SSR Mining Inc., together with its subsidiaries, engages in the operation, acquisition, exploration, and development of precious metal resource properties in the United States, Turkey, Canada, and Argentina. The company explores for gold doré, copper, silver, lead, and zinc deposits. Its mines include the Copler, located in Erzincan province, Turkey; the Marigold, located in Nevada, the United States; the Seabee, located in Saskatchewan, Canada; and the Puna, located in Jujuy province, Argentina.

26.    Anagold Madencilik ("Anagold") is the operator of the Copler Gold Mine in Turkey. Anagold was established in 2000 and is a joint-venture corporation of SSR Mining and Lidya Madencilik.

27.    The Copler Mine is located in east-central Turkey in the Erzincan Province, approximately 1,100 kilometers southeast from Istanbul and 550 kilometers east from Ankara,

Turkey's capital city. Construction activities at the Çöpler Mine began on October 25, 2009 and the first gold pour was realized on December 22, 2010.

28.     Copler is the largest revenue generating mine for SSR Mining, with the mine producing $137.4 million in revenue for the first quarter of 2022, equating to 38.7% of topline revenue for the quarter. In comparison to SSR's other mining sites, the Copler mine accounted for 36.7% of operating income for the period.

**B.**     **The Defendants Materially Misled Investors Concerning Safety Practices at the Copler Mining Site**

*June 27, 2022*

29.     On June 27, 2022, SSR issued a press release announcing a potential temporary halt of operations at the Copler mine due to a minor leak at the mine on June 21, 2022. The leak was estimated at eight kilograms of cyanide within the diluted solution from a pipeline that pumps solution to the heap leach pad. The cyanide leak was within the mine operating area and was cleaned up immediately without any environmental impact or discharge from site. The press release further stated that SSR Mining immediately notified the relevant authorities of the event and would keep the market informed of any material developments.

*August 2, 2022*

30.     On August 2, 2022, Defendants held an earnings call that included Defendants Antal, White and Beckham on behalf of SSR. During the call, the Defendant Antal provided analysts with an update regarding the suspension at the Copler mine noting that improvement initiatives were taken by SSR, and they are waiting on inspection and approval by regulators.

Defendant White noted that "[wh]ile our production guidance remains unchanged, we expect to finish the year at the lower end of this range, again reflecting the temporary suspension at Çöpler."

31.    On the same call, Defendant Beckham provided information regarding SSR's Environmental, Health, Safety and Sustainability ("EHS&S") stating:

> We saw an improvement in our injury rate in the quarter, *but it remains above where we want it to be and as always, an area of considerable effort and focus… Safety and the care for our teams, communities in the environment are core values, and we believe is foundational to business performance.*

(Emphasis added.)

### *September 19, 2022*

32.    At the Gold Forum Americas convention on September 19, 2022, Defendant Antal updated analysts as to the Copler mine shutdown stating "[o]bviously, we had a temporary shutdown going on there. Just very quickly, we take full accountability for what happened at Copler. We've been working very rigorously with the regulators to get a restart. And we expect that still within this quarter to actually have Copler back up and running. And then we're going to work very hard to try to claw back as much lost time as we can towards the end of the year and moving into next year."

### *October 5, 2022*

33.    On October 5, 2022, SSR issued a press release announcing positive exploration results for the Cakmaktepe extension project at the Copler mine. Defendant Antal stated in pertinent part:

> Copler has evolved significantly over its more than 10-year operating life, and the Cakmaktepe Extension project represents the next phase of growth for the asset. As highlighted in the 2021 TRS, the Cakmaktepe Extension will add 1.2 million ounces over 15+ years of production for an expected $69M in development capital, representing one of the highest return growth projects in the entire sector. These

9

drill holes provide both improved confidence for the Cakmaktepe Extension mine plan and set the stage for additional growth at the project. We will incorporate these results into an updated Mineral Reserve and Resource statement for the deposit in an updated Technical Report Summary for Copler expected in 2023.

In addition to the positive drill results, we have continued to de-risk the Cakmaktepe Extension project startup during the third quarter of 2022 with the receipt of the Environmental Impact Assessment ("EIA") for the first phase of the project. Clearly, Copler's best days lie ahead, with value accretive growth opportunities like our C2 project on the horizon and a wealth of exploration targets to advance across the district in the years to come."

*November 18, 2022*

34.     Defendants held an earnings call a few months later on November 18, 2022 wherein Defendant Beckham stated:

As always, I'll start with EHS&S. We were pleased to restart operations at Çöpler at the end of the quarter following the completion of improvement initiatives required by the Turkish authorities. ***The suspension was disappointing but did allow us to revisit a number of our processes and systems to improve our performance. The smooth start-up of operations is a testament to the work by the team. Positively and separately, we received a number of outstanding permits in Türkiye during the quarter. We will continue to work hard to maintain and build upon these relationships, ensuring positive contributions to our stakeholders and host communities. Safety and the care of our teams, communities and the environment are core values, and we believe are also foundational to the business performance.***

(Emphasis added.)

35.     These statements misled investors by providing investors with false information as to the Company's governance and management protocols relating to its safety practices and operational integrity at the Copler mining site.

10

*February 22, 2023*

36.    During an earnings call on February 22, 2023, Defendant Antal continued the false impression given to investors as he discussed SSR's Environmental, Social and Governance (ESG) initiatives and the recent earthquake in Turkey. During his opening remarks he stated:

> I'd like to start by first acknowledging the tragic earthquake impacting Turkey and Syria. Our thoughts go out to all the people who either directly or indirectly have been impacted. We are paying close attention to the situation where our mine rescue teams have been assisting the rescue efforts on the ground. Our people, both employees and business partners are the cornerstone of our business. How we operate and engage as we improve ESG is underpinned by SSR mining's core values. Whilst we are doing considerable work on all aspects of ESG, today, I'd like to focus on safety.
>
> ***In 2022, we worked on improving the systems and protocols as a foundation of our safe operating systems. We continue to deliver against the goals outlined in our annual sustainability report, including the rollout of the integrated management system and the progression of third-party closure reviews across all our operating sites to ensure a positive post mining future for all our stakeholders.*** We also work to develop a water stewardship strategy as part of our focus on continually reducing our environmental footprint going forward. We're proud of the progress, and we'll highlight them and our plans for the year ahead in our upcoming sustainability report.
>
> ***In the year ahead, we will increase our focus on field leadership and the quality of safe production getting our people home safe is our top priority and is a key improvement point for 2023.***

(Emphasis added.)

37.    Defendant Antal also gave an update regarding the expansion project at Copler, stating in pertinent part:

> At Copler, we successfully restarted operations and closed the year with a strong finish, delivering quarterly record throughput of more than 8,000 tonnes per day in the sulfide plant. This strong sulfide plant performance meant that the mine actually exceeded is to revise 2022 production guidance with full year production of 191,000 ounces, setting us up well for Copler to deliver production guidance of 240,000 to 270,000 ounces in 2023. During 2023, we expect to deliver the first gold production from Cakmaktepe Extension. Recall that the Cakmaktepe Extension is

expected to add 1.2 million ounces to Copler's life of mine. The project is a major contributor to SSR's long-term production profile, and this is an incredibly quick transition from discovery just 6 years ago. Our total conversion cost is pleading at only $6 for discovery plus $58 per ounce for development. Further, at the end of last year, we announced a number of positive exploration results that could potentially drive further growth. Of course, with the start-up of new mine comes development costs that are incorporated into Copler's site level all-in sustaining costs this year. While this provides a short-term mismatch as the mine and ultimately gold production ramps up -- in the longer term, Cakmaktepe provides a very attractive cash flow generation and increases in gold production.

With respect to our other growth initiatives, we continue to progress C2 expansion project towards a PFS expected in the second half of this year. C2 represents the next phase of growth for Copler and is another extremely high-return project for the business. Additionally, we closed the acquisition of another 30% in the Kartaltepe joint venture in the fourth quarter, and this transaction delivers SSR Mining's 80% ownership of the entire Copler District, streamlining operating and exploration activities across the portfolio. Notably, the Cakmaktepe Extension project continues to show potential on the Kartaltepe ground, and the licenses also host a number of other regional exploration prospects, including Mavidere, that will be part of the focus for the 2023 exploration efforts. As you can appreciate, we have a full suite of near- and longer-term growth opportunities across the Copler District, and we'll continue to aggressively advance each one of these projects and targets during the year.

<u>*May 4, 2023*</u>

38.    Defendants held an earnings call on May 4, 2023, wherein Defendant Antal commented on SSR's recent ESG initiatives stating in pertinent part:

On 14th of April, we published our fifth annual ESG and sustainability report, marking another step in SSR Mining's continued effort to operate responsibly and sustainably while maximizing the benefits to all our stakeholders. ESG is and has long been a core value and focus for the company as it firmly underpins our success. ***We continue to prioritize the health and safety of our employees and business partners and have recently implemented a focus and formal leadership in the field initiative to drive engagement and improve safety performance across the company.***

(Emphasis added.)

*August 2, 2023*

39.    Then on an earnings call held on August 2, 2023, Defendant Antal discussed the

Company's commitment to improving the safety performance across SSR's mining operations,

stating:

> ESG is and has long been a core value and focus for the company as it firmly
> underpins our success. We continue to prioritize the health and safety of our
> employees and business partners. And on the 14th of April this year, we published
> our fifth annual ESG and sustainability report, marking another step in SSR
> Mining's continued effort to operate responsibly and sustainably while maximizing
> the benefits to our stakeholders. In 2023, and as an improvement opportunity, we
> reinvigorated a focus in formal leadership -- in the field initiative to drive
> engagement and improve safety performance across the operations, which has been
> met with enthusiasm from our teams.

40.    On the same call, SSR Executive Vice President of Operations and Sustainability

William Nevin discussed operational improvement and efficiency, as well as safety practices at

SSR's mining facilities, stating:

> Since joining the company at the beginning of the year, I've been focused on
> operational improvement and efficiency and have spent the majority of my time at
> each of our 4 core operations. Already, I've come to respect the impressive talent
> and diversity of skill we have throughout the company. I'm very appreciative of all
> the hard work that has brought SSR mines where it stands today.
>
> At the same time, I see areas for improvement, and we will continue to define and
> prioritize these as we update our operating practices going forward. Before I dive
> into the individual assets, I want to start with a brief discussion about safety. Most
> important thing we do each and every day is getting our people home safe. As a
> core SSR value, this has always been a focus. Now we are driving increased
> leadership engagement and implementing simple tools to enable our people. Whilst
> this is improving safety, it is also improving the quality of work and results in the
> field as safe production delivery is an integral approach to our long-term success.

<u>*November 1, 2023*</u>

41.    Defendants held an earnings call on November 1, 2023 in which SSR Executive Vice President of Operations and Chief Corporate Development Officer F. Edward Farid commented on the Company's ESG initiatives stating:

> ESG is and long has been a core value and focus for the company as it firmly underpins our success. We continue to prioritize the health and safety of our employees and business partners and are seeing positive results with respect to our safety metrics across the portfolio. In 2023, we reinvigorated a focused and formal leadership in the field initiative to drive engagement and improve safety performance across the operations. This has been met with enthusiasm from our teams and is already showing positive results.

42.    On the same call, Executive VP of Operations and Sustainability William Nevin again reiterated SSR's commitment to safety at its facilities, stating in pertinent part:

> Before I dive into a review of the individual assets, I want to start with a discussion about safety. The most important thing we do each and every day is ensuring our people get home safe. As the core value for SSR Mining, this has always been a focus. We are continuing to drive increased leadership engagement and implementing simple tools to enable our people. Whilst this is an improving -- this is improving safety, it's also improving the quality of work and results in the field as safe production delivery is an integrated approach to a long-term success.

(Emphasis added.)

43.    The above statements in Paragraphs 27 to 40 were false and/or materially misleading. Defendants created the false impression that there were adequate and reliable safety protocols put in place by SSR management relating to the operations at the Copler mining site. Defendants repeatedly discussed on multiple earnings calls their commitment to worker health and safety at its mining sites, and prioritizing improving safety performance across all operations. In truth, SSR management was not concerned with safety protocols but instead prioritized growth projections and ramping up production levels, specifically at the Cakmaktepe extension at the

Copler mine. The previous cyanide leak in 2022 and the latest mine collapse are indicative that Defendants failed to provide the adequate and necessary safety standards and regulatory compliance within the Copler mining operation. Defendants misled investors by providing the public with materially flawed revenue guidance for fiscal 2023.

44.    The truth about SSR's safety practices and operational integrity at the Copler mine is material to investors. Had investors known that SSR lacked the necessary governance and risk management protocols, investors would have taken different actions with regard to their positions in SSR stock since the likelihood of another disaster at the Copler mine was imminent. The truth about SSR's projections and forecasting capabilities would have altered the total mix of information concerning SSR stock available to investors.

C.    **SSR Suspends Operations at the Copler Mine Due to a Slip on the Heap Leach Pad**

*February 13, 2024*

45.    On February 13, 2024, SSR issued a press release they were suspending operations at the Copler mine as a result of a large slip on the heap leach pad.

46.    Also on February 13, 2024, SSR hosted a 2024 Long Term Guidance call wherein Defendant Antal briefly mentioned the situation at the Copler mine and went on to discuss SSR's positive guidance release and technical report update. Defendant Antal stated:

> Okay. Thanks, Alex, and good morning, and thanks for joining us. We have been looking forward to this opportunity to present the results of the technical reports to you all for some time. Before we dive into what I think should be [indiscernible] of update, I do want to highlight an event which occurred at approximately 6:30 a.m. Eastern time regarding a large slip on the heap leach pad at Copler. The situation is developing as we speak, and our first priority is people and containment.

15

We will follow up the holding statement we just issued in due course. In the interim, we have suspended the operations at Copler. Once we complete our initial emergency response protocols on site, we will be able to provide more details. On the back of that, Bill MacNevin, who would have joined us today is now tied up, and I will be covering his sections in the presentation.

Moving on to today's business. The new technical reports provide a refreshed view of each of our assets, taking into account current market conditions, a period where inflation has impacted the industry cost base, [indiscernible] operation improvements at each of the assets across many of the metrics and resource conversion and exploration success across the portfolio.

47.    During the question-and-answer segment of the call, Defendant Antal cut the call short when asked about the unfolding situation at the Copler mine:

<Q: Ovais Habib- Scotiabank Global Banking and Markets- Analyst> Really sorry to hear about the [indiscernible] on the heap leach pad at Çöpler. Just hope everyone's side is okay.

<A: Rodney P. Antal > Yes. Look, in fact, I appreciate you mentioning it. Obviously, it's front and center in our mind right now, and it's still very early. So I don't have a lot more details to provide any one in the market. And in fact, I think given the situation is still dynamic, we're probably going to -- we're going to cut this conference call short now for questions. And obviously, we'll take those during the day one on one with individuals as we move around. But I think our priority right now should be at supporting the team on site.

And [indiscernible], if we could just move on to closing the call and appreciate it very much.

*February 16, 2024*

48.    February 16, 2024, SSR issued another press release that search and rescue operations to locate nine missing workers at the Copler mine. Significantly, the press release stated that operations remain suspended and eight Copler mine employees have been detained while the local authorities conduct their investigation.

16

*February 18, 2024*

49.    On February 18, 2024 SSR issued another press release acknowledging that several of our team members are facing charges in relation to the recent incident. The press release also stated that the Copler environmental permit was revoked, and the operation will remain suspended until further notice.

*February 27, 2024*

50.    On February 27, 2024 the Company issued a press release announcing SSR was not able to estimate or predict when it will resume operations at Copler and therefore was "assessing the potential impacts on the business, cash flows, results of operations and financial condition." In pertinent part, Defendants announced that due to the evolving situation at our Copler mine, we are retracting our previously issued 2024 and long-term guidance forecasts for Copler and Turkey. Defendants also announced they were suspending quarterly dividend payments and the automatic share purchase plan ("ASPP").

51.    An online article published by Business & Human Rights Resource Centre on February 27, 2024 reported that "[w]orkers at the site say they warned of the risk two days before the disaster. It is also alleged that previous warnings were ignored, and that the government redrew its earthquake fault line map in 2023 to play down the risk at the site."[1]

52.    An independent Turkish gazette Duvar English published an article on February 21, 2024 reporting that a delegation of scientists from Trabzon Karadeniz Technical University (KTÜ) Landslide Application and Research Center determined that the heap leach that caused the

---

[1] https://www.business-humanrights.org/en/latest-news/t%C3%BCrkiye-alleged-negligence-led-to-toxic-landslide-at-mine-where-nine-workers-remain-trapped-with-communities-and-environmental-groups-warning-of-severe-environmental-impacts-public-investigation-launched-incl-co-comments/

landslide in the Copler mine was above the "controllable level." "Hakan Ersoy, member of the board of directors of the research center, underscored, 'We have determined that the heap leach, which is a maximum of 150 meters in the world standards, reached 257 meters here which is an unbelievable figure.' Ersoy stated that they had not come across such practice in the world, and added 'The excessive water content in an uncontrollable heap leach and its accumulation at a point very close to the explosions in the production area brought the disaster.'"[2]

53.     The aforementioned press release and statements made by the Individual Defendants are fraudulent and in direct contrast to statements they made during the November 1, 2023 earnings call. On that call, Defendants reiterated they were prioritizing the health and safety of its employees, and had "reinvigorated a focused and formal leadership in the field initiative to drive engagement and improve safety performance across the operations."

54.     Investors and analysts reacted immediately to SSR's revelation. The price of SSR's common stock declined dramatically. From a closing market price of $9.72 per share on February 12, 2024, SSR's stock price fell to $4.50 per share on February 13, 2024, a decline of nearly 54% in the span of just a single day.

**D.     <u>Loss Causation and Economic Loss</u>**

55.     During the Class Period, as detailed herein, SSR and the Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of SSR's common stock and operated as a fraud or deceit on Class Period purchasers of SSR's common stock by materially misleading the

---

[2] https://www.duvarenglish.com/scientists-determine-heap-leach-caused-landslide-in-turkish-mine-70-pct-higher-than-maximum-news-63875

investing public. Later, when SSR and Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of SSR's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of SSR's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

56.    SSR's stock price fell in response to the corrective event on February 13, 2023, as alleged *supra*. On February 13, 2023, Defendants disclosed information that was directly related to their prior misrepresentations and material omissions concerning SSR's safety protocols at the Copler mine which misled investors by providing the public with materially flawed revenue guidance for fiscal 2023.

57.    In particular, on February 27, 2023, SSR retracted its previously issued 2024 and long-term guidance forecasts for Copler and Turkey.

**E.    Presumption of Reliance; Fraud-On-The-Market**

58.    At all relevant times, the market for SSR's common stock was an efficient market for the following reasons, among others:

(a)    SSR's common stock met the requirements for listing and was listed and actively traded on the NASDAQ during the Class Period, a highly efficient and automated market;

(b)    SSR communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public

disclosures, such as communications with the financial press and other similar reporting services;

(c)    SSR was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d)    Unexpected material news about SSR was reflected in and incorporated into the Company's stock price during the Class Period.

59.    As a result of the foregoing, the market for SSR's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in SSR's stock price. Under these circumstances, all purchasers of SSR's common stock during the Class Period suffered similar injury through their purchase of SSR's common stock at artificially inflated prices, and a presumption of reliance applies.

60.    Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**F.    No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine**

61.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in

this Complaint. As alleged above, Defendants' liability stems from the fact that they provided

investors with revenue projections while at the same time failing to maintain adequate forecasting

processes. Defendants provided the public with forecasts that failed to account for this decline in

sales and/or adequately disclose the fact that the Company at the current time did not have

adequate forecasting processes.

62.     To the extent certain of the statements alleged to be misleading or inaccurate may

be characterized as forward looking, they were not identified as "forward-looking statements"

when made and there were no meaningful cautionary statements identifying important factors that

could cause actual results to differ materially from those in the purportedly forward-looking

statements.

63.     Defendants are also liable for any false or misleading "forward-looking

statements" pleaded because, at the time each "forward-looking statement" was made, the speaker

knew the "forward-looking statement" was false or misleading and the "forward-looking

statement" was authorized and/or approved by an executive officer of SSR who knew that the

"forward-looking statement" was false. Alternatively, none of the historic or present-tense

statements made by Defendants were assumptions underlying or relating to any plan, projection,

or statement of future economic performance, as they were not stated to be such assumptions

underlying or relating to any projection or statement of future economic performance when made,

nor were any of the projections or forecasts made by the defendants expressly related to or stated

to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

64.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired SSR's common stock during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

65.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, SSR's common stock were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by SSR or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of January 31, 2024, there were 202 million shares of the Company's common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

66.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

68.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      (a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

      (b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of SSR;

      (c)    whether the Individual Defendants caused SSR to issue false and misleading financial statements during the Class Period;

      (d)    whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

      (e)    whether the prices of SSR's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

      (f)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Against All Defendants for Violations of*
### *Section 10(b) and Rule 10b-5 Promulgated Thereunder*

70.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

72.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of SSR common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire SSR's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

73.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for SSR's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

74.     By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

75.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of SSR's internal affairs.

76.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual

Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to SSR's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of SSR's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired SSR's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

77.    During the Class Period, SSR's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of SSR's common stock at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of SSR's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of SSR's common stock

declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

78.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

79.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### *Against the Individual Defendants*
### *for Violations of Section 20(a) of the Exchange Act*

80.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about SSR's misstatements.

82.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by SSR which had become materially false or misleading.

83.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which SSR disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause SSR to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of SSR's common stock.

84.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, SSR to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

85.     By reason of the above conduct, the Individual Defendants and/or SSR are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demand judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  March 22, 2024                    Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

 s/ Adam M. Apton
Adam M. Apton
33 Whitehall Street, 17th Floor
New York, N.Y. 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
aapton@zlk.com

*Attorneys for Plaintiff*